UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SHANE REPH, ET AL.                        CIVIL ACTION

VERSUS                                    NO: 07-7119

GHRON HUBBARD, ET AL.                     SECTION: "J" (3)

**ORDER AND REASONS**

Before the Court is Defendant, Southland Idealease's Motion for Partial Summary Judgment.  For the reasons below, Southland's Motion is **DENIED without prejudice**.

**BACKGROUND**

This case arises out of an automobile accident that occurred on August 17, 2007 in Jefferson Parish, Louisiana.  Plaintiffs allege that while traveling on Airline Highway, a truck driven by Defendant Ghron Hubbard crossed the center line, and struck Plaintiff's vehicle head-on causing injury to both the driver and passenger.  The truck is question was owned by Southland Idealease and was operated by CP Louisiana pursuant to a rental agreement.  While all the facts are not known, it appears that Hubbard signed the rental agreement, presumably on behalf of his employer, CP Louisiana.

Southland has filed this motion, asserting that CP Louisiana has a duty to defend and indemnify Southland due to provisions in the rental agreement and CP's alleged breach of that agreement.

With regards to indemnity, the rental agreement provides as follows:

> 10. Renter agrees to release, indemnify, and hold Lessor, Owner and IDEALEASE, INC. harmless from and against any and all claims, demands, suits, causes of action or judgments for death or injury to person or loss or damage to property arising out of or caused by the ownership, maintenance, leasing, repair, possession, use or operation of any vehicle covered by this Agreement, including, but not limited to the following:
> a.   Any claims or causes of action arising from statutory requirements of insurance and which Lessor would otherwise, pursuant to the terms hereof, be required to pay.
> b.   Any and all losses, damages, costs and expenses incurred because of injury or damage sustained by an occupant of said Vehicle, including without limitation, Renter, Renter's employees, agents or representatives and loss or damage to cargo or property owned by or in possession of the Renter, Renter's employees, agents or representatives or occupants.
> c.   All loss, damage, cost and expense resulting from Renter's violation of any term of this agreement or breach of Renter's warranties as expressed herein.
> d.   The value of all tires, tools and accessories damages, lost or stolen from the vehicle.
> e.   All cost of retaking the vehicle, including but not restricted to attorney's fees and court costs.
> f.   Any fines or penalties including forfeiture or seizure resulting from the use of the vehicle.
> g.   All claims from damages that Renter or any

>     other party may sustain as a result of any action
>     taken by Lessor under paragraphs 13 and 14 hereof.
>     h.   All costs of defense and expense of every
>     kind, including attorney's fees incurred in
>     connection with suits or claims covered under
>     paragraph 10.
> Furthermore, the Contract provided that
>
>  8. Insurance Provided by Renter.  Renter agrees to
>  provide liability and/or comprehensive and collision
>  damage insurance if so indicated on Page 1.  all
>  insurance to be provided by Renter pursuant to Page 1
>  and Paragraph 9 below shall: (a) provide primary
>  coverage with an insurance carrier approved by
>  Lessor; (b) provide a waiver of subrogation by the
>  insurance carrier in favor of Lessor, IDEALEASE,
>  INC., and Owner; and (c) be evidenced by a
>  Certificate of Insurance, in a form approved by the
>  Lessor, naming Lessor, Owner, IDEALEASE, INC. and
>  such other parties as Lessor may designate as
>  additional insured and Lessor and owner as loss
>  payee.  If Renter fails to provide any insurance
>  agreed to herein, or fails to furnish Lessor the
>  required Certificate of Insurance, Lessor may, but is
>  not obligated to, provide the insurance and add the
>  cost of such insurance pro rata to the claims for the
>  Vehicle, without prejudice to any other remedy Lessor
>  may have.

It appears that CP did procure insurance through Travelers Insurance Company and Southland was indeed named as an additional insured.

**PARTIES ARGUMENTS**

Southland argues that the contractual provisions above make it "crystal clear" that CP was contractually required to obtain insurance to secure the obligations set in the agreement. Southland argues that it is entitled to "defense under the

contract and additional insured status issued to CP Louisiana." Southland notes that Travelers has offered a qualified defense to Southland without indemnity.  Southland argues that CP must step into the shoes of the insurer, as required by paragraph 8 of the agreement.  The argument seems to be that because CP's insurer is failing to fully indemnify and defend Southland, CP must stand in the shoes of the insurer and defend and indemnify Southland, per paragraphs 8 and 10.  Southland takes the position that the contract requires CP to provide an unqualified defense and indemnity under the contract against "all claims for damages involving the use of the leased vehicle and to provide it additional insured status under its liability policy."  (Rec. Doc. 47-2).

CP argues that the indemnity language of the contract does not require that CP indemnify Southland for Southland's own negligence.  CP argues that it has provided a defense (through Travelers) to Southland as required by the contract. CP notes that it is only required to indemnify Southland for defense *under the contract*.  CP argues that in order for a party to be indemnified for its own negligence, there must be a clear statement of the intent of the parties , expressed in unequivocal terms, and this contract lacks the requisite language.  Because CP argues that it is not required to indemnify Southland for its own negligence, it does not have a duty to defend Southland in that regard.  Finally, CP argues that this motion is premature

4

because a cause of action for indemnification does not arise until the lawsuit is concluded and the costs of the defense are paid.  (Rec. Doc. 50).

## DISCUSSION

Southland points this Court to a series of cases which stand for the proposition that when a party to a contract fails to secure insurance naming a contracting party as an additional insured, then that party stands in the shoes of the insurer.  *See Myers v. Burger King Corp.*, 618 So. 2d 1123, 1125 (La. App. 4 Cir. 1993); *Lopez v. Hartford Accident & Indem. Co.*, 495 So. 2d 375, 378 (La. App. 3 Cir. 1986); *State v. Alexander& Alexander, Inc.*, 477 So. 2d 753, 757 (La. App. 1 Cir. 1985); *Ordonez v. W.T. Grant Co.*, 297 So. 2d 780, 782 (La. App. 4 Cir. 1974).  Southland is certainly correct as to the holdings of the above cases.  However, it is not clear how their holdings are applicable in this situation.  In both *Myers* and *Ordonez*, the court considered a situation where the party utterly failed to name the contracting party as an additional insured in any way.  *See Myers*, 618 So. 2d at 1125; *Ordonez*, 297 So. 2d at 782.  However, here, CP has obtained insurance and Southland, by its own admission, is named as an additional insured.  Therefore both *Myers* and *Ordonez* are distinguishable on their facts.  In both *Alexander* and *Lopez*, the Court determined that the coverage the

party provided was not the coverage contemplated by the contract. Therefore in both of those cases, the court held that the party must provide coverage because it failed to provide the proper insurance.

The Court must determine if Southland is being provided the coverage contemplated under the contract.  CP takes the position that Southland is being indemnified as the contract requires.  CP argues that because the indemnity language does not specifically require CP to indemnify Southland for its own negligence, CP is not required to do so, regardless of language in the agreement which says that CP will indemnify Southland for "any and all claims."  CP argues that in order for a party to be indemnified for its own negligence, there must be a clear statement of the intent of the parties , expressed in unequivocal terms.

In interpreting this contract, the Court must be guided by the general rules of contract interpretation contained in the *Louisiana Civil Code*.  In general terms the interpretation of a contract is the determination of the common intent of the parties.  LA. CIV. CODE ANN. art. 2045.  Louisiana law requires that when the words of a contract are clear and explicit, no further interpretation may be made in search of the parties intent.  LA. CIV. CODE ANN. art. 2046.  The Louisiana Supreme Court has held that an indemnity clause will not be construed to

6

indemnify an indemnitee against losses resulting to him through his own negligent acts unless such an intention is expressed in unequivocal terms.  *See Berry v. Orleans Parish Sch. Bd.*, 830 So. 2d 283, 285 (La. 2002); *Perkins v. Rubicon, Inc.*, 563 So. 2d 258, 259 (La. 1990); *Soverign Ins. Co. v. Tex. Pipe Line Co.*, 488 So. 2d 982, 983 (La. 1986).

In *Rubicon*, the Court considered a contract where B&B, Inc. agreed to provide maintenance services at Rubicon's Plant.  The contract included a provision that B&B agreed to hold Rubicon "harmless from all claims, suits, actions, losses and damages for personal injury, including death and property damage even though caused by the negligence of Rubicon, arising out of [B&B]'s performance of the work contemplated by the agreement.  *Rubicon*, 563 So. 2d at 258.  A B&B employee, filed suit against Rubicon alleging he had been injured by the negligence of Rubicon's employees while he was performing work for B&B.  In that case, the Court concluded that the parties "clearly intended that B&B would assume responsibility for injuries caused by the negligent acts of Rubicon."  *Id.* at 259.  Therefore the only question left in the case, was whether the accident arose out of B&B's performance of the contract.  The Court used a connexity test in determining the meaning of the term, "arising out of" and asked the question "Would the particular injury have occurred but for

the performance of work under the contract." *Id.* The Court concluded that because the Plaintiff would not have been at the Rubicon plant but for the contract, the accident must have arisen out of the contract and therefore B&B owed Rubicon indemnification.

The Court faced a similar question in *Berry*. In *Berry*, the Orleans Parish School Board entered into a contract with the Lighthouse of the Blind whereby Lighthouse provided mobility training services to Orleans Parish Public School students. *Berry*, 830 So. 2d at 283. The contract between the School Board and the Lighthouse included language that Lighthouse "shall indemnify, hold harmless and defend the School Board . . . from and against all claims, demands, suits, damages, judgments of sums of money, losses and expenses . . . arising out of the performance of any of the services to be performed by this Agreement . . . regardless of whether or not it is caused in part by a party indemnified hereunder." *Id* at 283-84. Subsequently, two New Orleans Public School students were allegedly sexually molested by an employee of Lighthouse. The students sued Lighthouse and the School Board for negligence, and the School Board sought indemnification under the contract. Lighthouse argued that the School Board was being sued for its own negligence and that the contract did not unequivocally provide

that the School Board should be indemnified for its own negligence. The court focused on the part of the agreement referring to indemnity that arises out of the performance of the contract. *Id.* at 286. Even though there was language in the contract that may have indicated that the School Board was entitled to indemnity for its own negligence, the Court held that as a matter of law, the School Board's negligence must be secondary to any negligence of Lighthouse. Using the connexity test it propounded in *Rubicon*, the Court held that the "arising out of language requires an [sic] connexity analysis independent of contractor fault that asks whether 'the particular injury would have occurred but for the performance of the work under the contract.'" *Id.* at 287. The Court concluded that but for Lighthouse's employment of an employee to perform services under the contract for the students, he would not have had access to them. Therefore the Court held that there was no cognizable legal theory upon which the School Board's negligence could be the sole cause of the injuries to the Plaintiffs. In *Berry*, the Court held that the School Board was entitled to indemnification.

In the contract at issue, the language states that CP will indemnify Southland "from and against any and all claims, demands, suits, causes of action or judgments for death or injury to person or loss or damage to property arising out of or caused

9

by the ownership, maintenance, leasing, repair, possession, use or operation of any vehicle covered by this Agreement." These words are very similar to the words used in the *Berry* and the *Rubicon* cases. While language saying that the indemnification arises no matter whose negligence causes the injury is missing, the Court must still perform a connexity analysis. If there is no possibility that Southland could be the sole cause of the accident, then it would not matter whether Southland is indemnified for its own negligence.

The question is, whether Southland could be the sole cause of the accident which injured the Plaintiffs. That question cannot be answered at this time. Fact questions remain as to what caused the accident and who may have been at fault.

Because the Court cannot answer the connexity question at this time, the Court must endeavor to answer whether Southland is indemnified against its own negligence. Louisiana courts have surveyed the case law on this issue and determined that there is both a majority view and a minority view. *See Arnold v. Stupp Corp.*, 205 So. 2d 797, 798 (La. App. 1 Cir. 1968). The majority view holds that the words "any and all liability" do not import an intent to impose an obligation to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter. The minority view holds that the words "any and all

liability" are unambiguous and the use of them means just that. Louisiana "is committed to the majority view." *Id.* (*cited with approval in Berry*, 830 So. 2d at 285.).

Since *Arnold*, courts in Louisiana have adhered to the majority view. *See Stewart v. Winn Dixie La.*, 686 So. 2d 907, 918-20 (La. App. 5 Cir. 1996). In *Stewart*, the court surveyed Louisiana cases and determined that language that merely states that indemnification must occur for "any and all claims" without providing a section stating "no matter which party causes the negligence" or some other such provision "cannot be read as including the extraordinary and harsh obligation to indemnify the indemnitee for damages occasioned by the sole negligence of the latter." *Id.* at 920.[1]

Therefore, at this time, summary judgment would be inappropriate. The Court must know more about the facts of the case, and what negligent actions could be ascribed solely to Southland. If and when that happens, this Motion for Summary Judgment may be pleaded again.

Accordingly,

**IT IS ORDERED** that Defendant, Southland Ideadlease's Motion

---

[1] It should be noted that the key word in this rule is *sole*. It appears to be contrary to public policy in Louisiana for an indemnitee to escape liability for its own negligent actions unless it specifically contracted for such protections.

for Partial Summary Judgment is **DENIED without prejudice**.  The motion may be reurged at a later date closer to trial.

New Orleans, Louisiana this the 15th day of April, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE